BROWN et al. v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. March 26, 1907.)

No. 61.

1. PRINCIPAL AND SURETY—BOND OF BIDDER FOR GOVERNMENT WORK—LIABILITY OF SURETIES.

A bond given by a bidder for government work conditioned that if his bid was accepted he would enter into a contract and furnish a bond for its performance within 10 days, or, in case of his failure to do so, the sureties would pay to the United States "the difference in money between the amount of the bid of said bidder so accepted and the amount for which the proper officer of the United States may contract with another party to do the work proposed, if the latter amount be in excess of the former," contemplates that, if the bidder fails to enter into a formal and binding contract in accordance with his proposal, the government may relet the work and enter into an essentially similar contract with another party, and then look to the sureties for indemnity to the extent of its loss. When such second contract is let, the measure of the sureties' liability is fixed at the difference in price under such contract and the bid of their principal, and cannot be affected by the fact that the contractor fails to complete the work and a third contract is made whether at greater or less cost to the government.

2. SAME—DEFAULT OF BIDDER—MEASURE OF SURETY'S LIABILITY.

Defendants became sureties on the bond of a bidder for a government contract for furnishing and laying in place toward the construction of a riprap breakwater such a quantity of stone "dependent upon the price per ton of stone bid" as could be furnished in place for $45,000; the bond being conditioned that if the bid was accepted and the bidder failed to enter into the contract defendants would pay to the United States the difference in money between the amount of the bid so accepted, and the amount for which the government might contract with another party to do the work proposed, if the latter amount should be in excess of the former. The bid was accepted, but the bidder failed to enter into contract, and the work was let under the same conditions to a second bidder at an increased price per ton for stone; the necessary result being that the second bidder was required to furnish a smaller quantity of stone. *Held*, that such fact did not render the second contract one for doing substantially different work from that proposed by the first bid, so as to relieve defendants from liability, but that they were liable for the value of the stone in

place which the government would have obtained under the first bid in excess of that which it obtained under the second at the price bid by their principal.

In Error to the Circuit Court of the United States for the Southern District of New York.

Writ of error by the defendants in the court below to review a judgment for the plaintiff.

H. E. Lippincott, for plaintiff in error.

F. W. Bird, Winfred T. Denison, and Henry L. Stimson, for defendant in error.

Before WALLACE, LACOMBE, and COXE, Circuit Judges.

PER CURIAM. This in an action against Brown and Fleming as sureties on a bond executed to the United States. By the bond, they undertook that if the bid of Charles Frey, Jr., "herewith accompanying, dated June 12, 1899, for building a riprap breakwater at Larchmont Harbor, Long Island Sound" should be accepted within 60 days from the date of the opening of proposals therefor, Frey would, within 10 days after notice of such acceptance, enter into a contract with the proper officer of the United States to do the work proposed by said bid, at the prices offered by said bid, and in accordance with the terms and conditions of the advertisement inviting said proposals, and that he would give bond with good and sufficient sureties for the faithful and proper fulfillment of such contract; and they further undertook to pay to the United States, in case Frey should fail to enter into such contract or give such bond within 10 days after said notice of acceptance, "the difference in money between the amount of the bid of said bidder so accepted and the amount for which the proper officer of the United States may contract with another party to do the work proposed, if the latter amount be in excess of the former."

By the advertisement mentioned in the bond the government invited proposals from bidders for furnishing and laying in place toward the construction of a riprap breakwater such a quantity of stone, "dependent upon the price per ton of stone bid," as could be furnished in place for $45,000. The proposal or bid of Frey mentioned in the bond was to "furnish the riprap stone in place at 43 cents per ton." Frey's bid was accepted by the government; but, after due notification thereof, he failed to enter into the contract, and, more than 10 days after such notification having expired, the government readvertised the work and invited proposals similar to those originally invited, and, having accepted the bid of one Conkling pursuant thereto, entered into a contract with him. By the bid of Conkling he undertook to furnish the stone and lay it in place at the price of 51 cents per ton. Conkling partly performed his contract, but subsequently abandoned it; and thereupon the government contracted with Anderson & Murphy to complete the work, and they fully performed it.

Upon the trial both parties moved for the direction of a verdict, and the court directed a verdict for the plaintiff.

The assignments of error challenge merely the ruling of the trial judge in directing a verdict for the plaintiff. Most of the questions which have been argued by the plaintiffs in error are not presented by the facts of the case. The only contention which merits consideration is that the contract with the government made with Conkling was not one to do the same work which Frey offered to do by his proposal. If this is true, the amount for which the sureties became liable was not established upon the trial according to the mode provided for in their undertaking; that amount being the "difference in money between the amount" of Frey's bid and "the amount contracted for with another party to do the work proposed," and only nominal damages were recoverable.

It is the meaning of the undertaking that the sureties will be responsible that Frey will enter into a formal and binding contract pursuant to his proposal, and if he fails the government may relet the work and enter into an essentially similar contract with another party, and then look to the sureties for indemnity to the extent of its loss. The undertaking does not contemplate that if the second contract is not performed the government may enter into a third, and still look to the sureties for indemnity for the performance of the contract; but it contemplates that when the second contract shall be made the government is to rely for its protection against loss upon that contract, and the responsibility of the party who enters into it. It contemplates that, if by the second contract the government secures as favorable terms as it would have obtained by the original contract, no occasion for indemnity from the sureties can arise; but, if the terms are not as favorable, the occasion will arise, and the loss is to be measured by the difference in the contract prices of performance. It does not mean that if the second contract shall not be performed, and a third is made, the sureties are to be thereby released from their obligation. It does mean that, if by the terms of the second contract no apparent loss has accrued to the government, they are no longer liable; but, if by its terms an apparent loss has accrued, they shall be liable; and whether a third contract is made or not, or whether the government incurs a larger or smaller subsequent loss, or whether it abandons the work altogether, are matters of no concern to them.

The obligation of a surety is not to be extended beyond its terms, and it follows that if the contract made by the government with Conkling was not to do substantially the work which Frey proposed to do, the deviation precludes the government from establishing the amount of the loss.

It appears that the contract which Frey should have entered into would have required him to furnish 104,000 tons of stone, while the contract entered into with Conkling only required him to furnish 88,000 tons. Such a difference in the quantities of stone to be furnished would render the two contracts radically different were it not that the difference was created necessarily by the difference in the two bids for doing the same work. Both contractors by their bids promised to supply such a quantity of stone as at the prices per

ton mentioned by them, respectively, should amount to the sum of $45,000, and the difference in the quantities of stone results simply from the difference between their bids in the price per ton. Frey's bid at 43 cents a ton was equivalent to a proposal to furnish 104,-000 tons. Conkling's bid at the price of 51 cents per ton was equivalent to a proposal to furnish 88,000 tons. The contract with Conkling was a contract to do the work proposed to be done by Frey; but with a limitation in quantity necessitated by the difference in the price. This difference was an incident contemplated by the undertaking of the sureties, and the purpose and object of the bond was to protect the government from any loss which might arise in consequence thereof.

Owing to the failure of Frey to enter into and perform his contract, the government obtained under the Conkling contract 16,000 tons less stone than it would have obtained from Frey. It was obliged to pay $45,000 for 16,000 tons less than it would have obtained by the terms of Frey's proposal. The phraseology of the bond is not happily chosen, but, read as it must be, with the advertisement and the proposal of Frey, which are annexed to and form a part of it, we are unable to doubt that it obligated the defendants to pay to the government the difference, at the price fixed in Frey's proposal, between the quantity of stone which he promised to deliver, and the quantity which the government was able to obtain by the Conkling contract. It follows that a verdict was properly directed for the plaintiff.

The assignments of error do not challenge the correctness of the computations adopted by the trial judge in directing a verdict, and consequently we are not called upon to consider whether or not the computation was correct.

The judgment is affirmed.